BARFIELD, J.
Tony L. Davis, the appellant, was convicted of burglary, aggravated battery and false imprisonment. We reverse the conviction for burglary and remand for a new trial on this charge. We affirm the remaining convictions without comment. On remand, the trial court is directed to consider whether the outcome of the burglary charge necessitates resentencing on the aggravated battery and false imprisonment charges and, if so, to resentence appellant accordingly.
Appellant correctly contends that the conviction of burglary must be reversed based on the fact that the trial judge included the “remaining in” portion of the burglary instruction. This is not a case where the facts could support a surreptitious remaining. Appellant could therefore not be convicted of burglary unless he had the requisite intent to commit theft or robbery when he entered the dwelling. Accordingly, the conviction of burglary is reversed. Foster v. State, 861 So.2d 434 (Fla. 1st DCA 2002), review denied, 880 So.2d 1212 (Fla.2004). As in Foster, we certify the following question as one of great public importance:
*519 HAS SECTION ONE OF CHAPTER 2001-58, LAWS OF FLORIDA, LEGISLATIVELY OVERRULED DELGADO v. STATE, 776 So.2d 233 (Fla.2000), AS TO CASES NOT FINAL AT THE TIME OF SUCH DECISION IN WHICH THE OFFENSES WERE COMMITTED ON OR AFTER FEBRUARY 1, 2000, THEREBY PERMITTING A TRIAL COURT TO INSTRUCT A JURY THAT IT MAY FIND A DEFENDANT GUILTY OF BURGLARY, DESPITE EVIDENCE SHOWING A LEGAL ENTRY INTO THE PREMISES AND THAT AN OFFENSE WAS COMMITTED THEREIN WHILE THE DEFENDANT REMAINED WITHIN NON-SURREPTITIOUSLY?
Although we conclude that the present matter is controlled by the decision in Foster, we acknowledge confusion due to language in the decision in Bunkley v. State, 882 So.2d 890 (Fla.2004). In Foster, it was recognized that:
Special care must be exercised in interpreting criminal statutes where subsequently enacted legislation is considered, because the Florida Constitution restricts legislative power by forbidding statutes that authorize sanctions, and proscribing the application of later enacted statutes that “affect prosecution,” for conduct that has already occurred. See Art. X, § 9, Fla. Const. (“Repeal or amendment of a criminal statute shall not affect prosecution or punishment for any crime previously committed.”); State v. Smith, 547 So.2d 613, 616 (Fla.1989); Booker v. State, 514 So.2d 1079, 1082-83 (Fla.1987); State v. Eldredge, 801 So.2d 965, 966 (Fla. 4th DCA 2001); Rock v. State, 800 So.2d 298, 299 (Fla. 3d DCA 2001); State v. Miranda, 793 So.2d 1042, 1044 (Fla. 3d DCA 2001); Heath v. State, 532 So.2d 9, 10 (Fla. 1st DCA 1988). See also Fla. Const., Art. I, § 10 (“No ... ex post facto law ... shall be passed.”). These constitutional restrictions on retrospective criminal statutes apply with full force to legislation explicitly purporting to nullify a judicial decision that has given a criminal statute a definitive gloss. See Smith, 547 So.2d at 616-17.
Pertinent in the present case is the state constitutional prohibition against applying a subsequently enacted statute in a way that “affect[s] prosecution ... for any crime previously committed.” Art. X, § 9, Fla. Const. Under Article X, section 9, the “repeal or amendment of any criminal statute does not affect the prosecution or punishment for any crime previously committed.” 15A Fla. Jur.2d Criminal Law § 2970 (2001).
The effect of this constitutional provision is to give to all criminal legislation a prospective effectiveness; that is to say, the repeal or amendment, by subsequent legislation, of a pre-exist-ing criminal statute does not become effective, either as a repeal or as an amendment of such pre-existing statute, in so far as offenses are concerned that have been already committed prior to the taking effect of such repealing or amending law.
Raines v. State, 42 Fla. 141, 28 So. 57, 58 (1900). See Plummer v. State, 83 Fla. 689, 92 So. 222, 223 (1922) (dicta); Bradley v. State, 385 So.2d 1122, 1123 (Fla. 1st DCA 1980); State v. Pizarro, 383 So.2d 762, 763 (Fla. 4th DCA 1980) (“In fact, retroactive application of an amended or repealed statute affecting prosecution or punishment is unconstitutional. Article X, Section 9, Florida Constitution.”).
In deciding Delgado as it did, the Supreme Court of Florida unambiguously rejected its prior interpretation of *520 section 810.02(1). See 776 So.2d at 241 (“[T]oday, we recede from this Court’s previous opinions in Robertson v. State, 699 So.2d 1343 (Fla.1997), Jimenez v. State, 703 So.2d 437 (Fla.1997), and Raleigh v. State, 705 So.2d 1324 (Fla.1997), a decision which we do not undertake lightly.”). Although legislative amendment of a statute may change the law so that prior judicial decisions are no longer controlling, it does not follow that court decisions interpreting a statute are rendered inapplicable by a subsequent amendment to the statute.” Smith, 547 So.2d at 616 (quoting Heath, 532 So.2d at 10).
In Heath, this court recited the following principles: (1) it is the judiciary’s function to declare what the law is, thus court decisions interpreting a statute are not necessarily rendered inapplicable by a subsequent amendment, but must be examined in light of a statutory amendment “to determine what law may be applicable after the amendment;” (2) the statutes in effect at the time of commission of a crime control both the offenses for which a perpetrator can be convicted and the punishments which may be imposed....
Payne v. State, 538 So.2d 1302, 1303 (Fla. 1st DCA 1989). By the time appellant stood trial, the Delgado court’s new, definitive construction of section 810.02(1) was binding. The offense allegedly occurred before Chapter 2001-58, section 1, Laws of Florida, took effect. By the time Chapter 2001-58 was enacted, the Delgado court had already announced the controlling construction of section 810.02(1), Florida Statutes (1989), as to all cases not yet final as of August 24, 2000. The Legislature was powerless to alter the chronology of these historical facts or to blink their constitutional significance.
Foster v. State, 861 So.2d 434, 439, 441 (Fla. 1st DCA 2002) (emphasis added; footnotes omitted). In a concurring opinion in Bunkley, joined by two other justices, Justice Wells states:
[A] decision of a Florida district court of appeal is the law throughout all of Florida on a particular point of law until there is a different rule by another district court or until this Court renders a different rule.... [16]
... A decision of this Court does not, under Florida precedent, erase and make disappear the law of Florida announced by the district court in a decision which is final and which is in effect until this Court changes the law. The person convicted of violating the law remains convicted under the law of Florida which was in effect at the time the person was convicted, just as the person would remain convicted after the Legislature changed the law under which the person was convicted subsequent to the person’s conviction. See Magaw v. State, 537 So.2d 564 (Fla.1989); Moore v. State, 748 So.2d 1094 (Fla. 3d DCA 2000). For more than a century, the law of Florida has been that “[rjepeal or amendment of a criminal statute shall not affect prosecution or punishment for any crime previously committed.” Art. X, § 9, Fla. Const.
*521 882 So.2d at 905, 908. We are not certain if Justice Wells was implying that Article X, section 9 of the Florida Constitution is applicable to judicial decisions or if he was instead citing the provision in support of an analogy between judicial changes in the law and legislative changes in the law. We accordingly certify the following questions to be of great public importance:
DOES ARTICLE X, SECTION 9 OF THE FLORIDA CONSTITUTION APPLY TO CHANGES IN LAW BASED ON JUDICIAL OPINIONS?
IF SO, HOW CAN ARTICLE X, SECTION 9 OF THE FLORIDA CONSTITUTION BE RECONCILED WITH GIVING CHANGES IN LAW APPLICATION IN PIPELINE CASES WHEN THE CRIME WAS COMMITTED PRIOR TO THE CHANGE IN THE LAW?
AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings.
BOOTH and ALLEN, JJ., concur.

 The plain fact is that the Florida Constitution has made a nonconflicted decision of a district court the law of all of Florida, and this Court has uniformly recognized this fact in its construction of the Florida Constitution since 1957.... It necessarily follows under this constitutional structure that when decisions of the district courts provide the Florida Supreme Court with jurisdiction in cases of statutory construction, and the Court makes a decision contrary to the district court decision as to statutory construction, the Florida Supreme Court has changed the law.